IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMMANUEL C. IWUOHA, § | | |
| Movant, | § | |
| | § | 3:18-cv-2712-B (BT) |
| v. | § | 3:13-cr-0481-B (BT) (03) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Emmanuel C. Iwuoha, a federal prisoner, has filed a motion under 28 U.S.C. § 2255 to vacate, set-aside, or correct his sentence. For the following reasons, the Court should deny the motion.

I.

Iwuoha was charged as part of a conspiracy to operate a pill mill. He proceeded to trial with three of his co-defendants. A jury convicted Iwuoha of conspiracy to unlawfully distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(E)(i), and the Court sentenced him to 97 months' imprisonment. The Fifth Circuit Court of Appeals subsequently affirmed Iwuoha's conviction and sentence, *United States v. Oti*, 872 F.3d 678 (5th Cir. 2017), and the Supreme Court denied his petition for certiorari. *Iwuoha v. United States*, 138 S. Ct. 1988 (2018). Iwuoha has now filed a motion under § 2255 to vacate, set-aside, or correct his sentence, in which he argues: (1) he received ineffective assistance of counsel at trial; and (2) he is actually innocent.

1

The following factual background is taken from the Fifth Circuit's opinion on direct appeal:

> Defendant-Appellant Theodore Okechuku is a medical doctor who owned and operated a pain-management clinic called the Medical Rehabilitation Center in Dallas, Texas. Okechuku worked at the clinic one to two days a week, also working full-time as a pediatric anesthesiologist at the University of Mississippi. Okechuku operated the clinic with the assistance of Ignatius Ezenagu, who worked as office manager at the clinic. The clinic was a cash-only business, and it did not accept insurance, Medicaid, or Medicare, nor did it take appointments. When the clinic opened in the mornings, it usually had thirty to forty patients waiting to enter. On average, the clinic had $5,000 in revenue a day and as much as $11,000 per day.
>
> In addition to Okechuku, two of the other defendant appellants worked at the clinic. Elechi Oti was a licensed physician's assistant who saw patients and wrote prescriptions at the clinic three days a week. Emmanuel Iwuoha, who did not have a medical license in the United States, saw patients and wrote prescriptions that were presigned by Okechuku. Okechuku paid Oti and Iwuoha per patient, and the patient visits typically lasted only four to eight minutes and involved little-to-no physical examination. Their medical notes were consistently sparse, and they wrote almost every patient a prescription for hydrocodone.
>
> A man named Jerry Reed frequently brought people to the clinic. David Reed, Jerry's brother, and Defendant-Appellant Kevin Rutledge also brought people to the clinic. Jerry Reed, David Reed, Rutledge, and their cohorts recruited "patients"—often from homeless shelters—and drove them to the clinic and paid for their patient examination. After the patients received their prescriptions from the clinic, these men would pay to fill the prescriptions and keep the medication to be resold later. The men payed the patients as much as $50 each for their services.
>
> Okechuku implemented various security measures at the clinic. A large amount of cash was generated at the clinic every day. Okechuku put up bars around the room where clinic employees collected cash, hired armed security guards, and installed surveillance cameras that allowed him to observe remotely what was happening at the clinic

from his cell phone. He also required clinic employees to fax him the clinic's cash earnings each day.

In April 2013, Okechuku fired Ezenagu. Several days after Okechuku fired Ezenagu, the FBI executed a search warrant at the clinic, suspecting that the clinic was being used as a "pill mill"—a drug business exchanging controlled substances for cash under the guise of a doctor's office. Agents seized patient files, business records, pre-written prescriptions, and seventy-seven days of surveillance camera footage.

In 2014, Okechuku, Oti, Iwuoha, Rutledge, David Reed, Jerry Reed, and Ezenagu were all charged in a superseding indictment with conspiring to unlawfully distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(E)(i) (Count One); using, carrying, and brandishing a firearm during and in relation to, and possessing and brandishing a firearm in furtherance of, a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (1)(A)(ii) (Count Two), and conspiring to do the same in violation of 18 U.S.C. § 924(o) (Count Three). The government later filed a motion to dismiss Count Three as to everyone except for Ezenagu and Okechuku. In October 2015, Okechuku, Iwuoha, Oti, and Rutledge proceeded to trial together.

At trial, the defense's theory was that Ezenagu used the clinic without Okechuku's knowledge and made an unlawful agreement with Jerry Reed to bring illegitimate patients into the clinic. Defense counsel contended that these fake patients duped Okechuku, Oti, and Iwuoha into prescribing them controlled substances that were not medically necessary. Defense counsel also asserted that Okechuku and his employees ran a legitimate medical clinic and conscientiously tried to screen for illegitimate patients. Okechuku testified at trial in his own defense.

The government's theory of the case was that the defendants operated the clinic as a "pill mill." In support of this theory, the government presented five full days of evidence, including eighteen witnesses as well as video and photographic evidence of the events that transpired at the clinic. After a two-week trial, the jury found Okechuku, Oti, Iwuoha, and Rutledge guilty of Count One—conspiring to unlawfully distribute hydrocodone outside the scope of professional practice and without a legitimate medical purpose. The jury also found Okechuku

3

>guilty of Counts Two and Three—using, carrying, and brandishing a firearm during and in relation to a drug-trafficking crime and conspiring to do the same.
>
>The district court sentenced Okechuku to 300 months in prison, Oti to 97 months, Iwuoha to 97 months, and Rutledge to 120 months.

*Oti*, 872 F.3d at 684-86.

## II.

A.  <u>Iwuoha fails to show he received ineffective assistance of counsel.</u>

To sustain a claim of ineffective assistance of counsel, a movant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a movant must prove prejudice. To prove prejudice, a movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the

4

prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Iwuoha claims he received ineffective assistance of trial counsel when his attorney:

(a) failed to properly review the case with him prior to trial, and insisted that Iwuoha proceed to trial based on an incomplete investigation and misunderstanding of the law;

(b) operated under a conflict of interest;

(c) failed to object to opinion testimony from a government witness;

(d) failed to effectively cross-examine witness Ignatius Ezenagu; and

(d) failed to present a defense or interview and subpoena witnesses.

The Court addresses these arguments in turn.

First, Iwuoha claims his attorney insisted that he proceed to trial based on the mistaken belief that because Dr. Okechuka "knew everything Iwuoha was doing at the clinic, then the Government 'had no case' against Iwuoha." Pet. at 4, Decl. at 1 (ECF No. 1). Iwuoha also claims his attorney never discussed with him the strengths of the government's case or the benefits of entering a plea agreement, insisted he proceed trial, did not sufficiently meet with him prior to trial, and failed to show him discovery.

Iwuoha fails to show his attorney was ineffective. Iwuoha claimed at trial, and continues to claim here, that he is innocent of the offense. He has therefore

5

failed to show there was a reasonable probability that absent his attorney's alleged insistence that he proceed to trial or his attorney's belief that the government had no case, he would have pleaded guilty. He also cannot show that the district court would have accepted a guilty plea in the face of his claims that he was innocent. Further, he has not shown a reasonable probability that additional meetings with his attorney, or review of the discovery, would have changed the result of the trial. These claims should be denied.

Iwuoha next claims his attorney had a conflict of interest because he attempted to aid Okechuku's case. Iwuoha claims his attorney told him not to testify at trial because it would hurt Okechuku's case, and his attorney reviewed video evidence to help Okechuku instead of him.

When a claim of ineffective assistance of counsel is based on an alleged conflict of interest, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance, thereby rendering the verdict unreliable. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "An 'actual conflict' exists when defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a present or former client." *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). A conflict of interest must be actual, rather than potential or speculative, for it to violate Sixth Amendment standards. *See Barrientos v. United States*, 668 F.2d 838, 841 (5th

Cir. 1982). If a movant shows that his attorney's conflict of interest affected the adequacy of his representation, he need not demonstrate prejudice before he may obtain relief. *Cuyler*, 446 U.S. at 349-50.

Iwuoha has failed to establish his attorney acted under a conflict of interest. There is no evidence that Iwuoha's attorney represented Okechuku at any point prior to this case or during this case. Further, at the trial, Iwuoha stated it was his decision not to testify. The record show as follows:

> COURT: And, Mr. Iwuoha, you understand you have the right to testify if you wanted to?
>
> IWUOHA: Yes.
>
> COURT: That's your decision. You're choosing not to?
>
> IWUOHA: Yes, sir.

(ECF No. 415 at 8-9). Additionally, Iwuoha's claim that his attorney reviewed video evidence to help Okechuku instead of him is conclusory. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings); *United States v. Merrill*, 340 Fed Appx. 976, 978 (5th Cir. 2009) (stating a movant's "own affidavit, containing self-serving conclusional allegations, is insufficient" to warrant habeas relief). Iwuoha's claims fail to establish that he received ineffective assistance of counsel.

Iwuoha further argues his attorney was ineffective because he failed to object when a government witness testified that pre-signing prescriptions for

7

hydrocodone was a felony under Texas law. Iwuoha raised a similar claim on direct appeal. The Fifth Circuit stated:

> Section 481.074 of the Texas Health & Safety Code provides that "a person may not dispense a controlled substance in Schedule III or IV . . . without a written . . . prescription of a practitioner . . . . A prescription under this subsection must comply with other applicable state and federal laws." Tex. Health & Safety Code § 481.074(g). Iwuoha acknowledges that the prescriptions he gave to patients with pre-signed prescriptions were Schedule III drugs. And federal regulations provide that "[a]ll prescriptions for controlled substances shall be dated as of, and signed on, the day when issued[.]" 21 C.F.R. § 1306.05. Because Texas and federal law state that it is unlawful to dispense the drugs Iwuoha was dispensing without a prescription signed on the same day they were prescribed, we conclude that there was no error here, plain or otherwise.

*Oti*, 872 F.3d at 695. Because signing prescriptions for hydrocodone in advance of the date the prescription was issued was a felony under Texas law, Iwuoha has failed to establish his attorney was ineffective for failing to preserve an objection to the government witness's testimony.

Iwuoha also claims his attorney failed to investigate and interview witnesses. He states he told his attorney that Clara Egbim and "manager" Onuoha could provide exculpatory testimony, but that his attorney failed to interview these witnesses or call them to testify. Iwuoha, however, has failed to submit any affidavit or other evidence from any witness that they would have appeared at trial, and would have testified favorably for the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) ("[F]or the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would

8

have been favorable, but also that the witness would have testified at trial."); *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) (stating "hypothetical or theoretical testimony will not justify the issuance of a writ"). This claim should be denied.

Iwuoha claims his attorney failed to effectively cross-examine Ignatius Ezenagu who was the office manager of the Medical Rehabilitation Clinic. Ezenagu was a co-defendant who pleaded guilty and testified at trial for the government. Iwuoha raises several instances that he claims show his attorney ineffectively cross-examined Ezenagu. For example, he argues his attorney failed to sufficiently confront Ezenagu about a theft conviction. The record shows, however, that Ezenagu was extensively cross-examined about his theft conviction. (Crim. Case ECF No. 387 at 205-07). Iwuoha fails to state what other questions should have been asked about the theft conviction. Iwuoha also complains his attorney's cross-examination of Ezenagu was based on philosophical questions and pop culture. The record shows his attorney used a hypothetical in attempting to question Ezenagu about determining a person's credibility, and he asked Ezenagu if he understood that the term "Benjamins" refers to money. (*Id.* at 243-244). These questions fail to establish that counsel was constitutionally ineffective.

Iwuoha also claims his attorney failed to adequately question Ezenagu when Ezenagu testified that although he did not know what Iwuoha and Jerry Reed discussed in Iwuoha's office, he "visualized it." (*Id.* at 161). The record shows that

defense counsel objected to this testimony and asked for a clarification regarding whether Ezenagu had personal knowledge about Iwuoha's and Jerry Reed's discussions. The prosecutor then asked Ezenagu if, based on his experience at the clinic, Ezenagu believed that Iwuoha was aware of what Jerry Reed, Kelvin Rutledge, and David Reed were doing at the clinic. Ezenagu stated, "yes." (*Id.* at 161-62). Counsel for Oti objected to this testimony and stated there was no basis for Ezenagu's conclusion. (*Id.* at 162). The trial court overruled Oti's counsel's objection. The record therefore shows that defense counsel raised objections to Ezenagu's testimony and clarified that Ezenagu had no personal knowledge of the discussions between Iwuoha and Jerry Reed. Iwuoha has failed to establish his counsel was ineffective.

Iwuoha also argues his attorney failed to object when the trial court allegedly made comments that lowered the government's burden of proof. Iwuoha raised a similar claim on direct of appeal. In denying that claim, the Fifth Circuit stated:

> Iwuoha argues that the district court erred when it made a comment before the jury that had the effect of lessening the government's standard of proof. During the defense's direct examination of defense expert Dr. Warfield, the district court made the following comment:
>
>> Counsel, I still don't—that's just a variation of that last question. I don't see how that is going to help this jury answer the issues before them, whether the prescriptions were properly issued in this case. That's the issue the jury is going to have to answer. Stick with that.
>
> Iwuoha argues that the question before the jury was not whether the prescriptions were *properly* issued but whether they were *legally* issued. Iwuoha argues that the district court's comment led the jury to

10

> believe that mere negligent care in issuing prescriptions warranted a conviction and therefore impacted his right to a fair trial. Because Iwuoha did not object to the district court's statement, we review the district court's statement for plain error. *See McGee*, 821 F.3d at 646.
>
> We are unpersuaded that the district court's statement amounts to plain error because Iwuoha has failed to show that the comment plainly misstated the law nor has he shown that he was prejudiced by the comment. In the context of the district court's statement, the difference between *properly* issued and *legally* issued appears to be merely semantic in nature. The district court never indicated that there was a distinction between the two terms in the way it used them and therefore did not lower the standard by using the word "properly" in the comment to defense counsel. However, even assuming *arguendo* that the district court misstated the law, Iwuoha has failed to show that he was prejudiced by a single comment to defense counsel during a two-week jury trial. Any harmful effect this comment might have had on the jury was cured by the jury instructions, which correctly charged that it must find that the defendants "unlawfully distributed or dispensed hydrocodone . . . outside the scope of professional practice."

*Oti*, 872 F.3d at 694-95. Here, Iwuoha argues his attorney was ineffective when he failed to preserve an objection to the trial court's comments, which caused the Fifth Circuit to review the claim for plain error rather than conducting a *de novo* review. Iwuoha, however, fails to show that but-for his attorney's failure to object to the court's comment, there is a reasonable probability that the result of the trial would have been different. As the Fifth Circuit stated, the trial court did not lower the burden of proof by using the term "properly," and further, even assuming the court's statement was improper, the jury instructions cured any harmful effects of the comment. This claim should be denied.

11

B.     <u>Iwuoha fails to show he is actually innocent.</u>

Iwuoha argues he is actually innocent. A claim of actual innocence must be based on reliable evidence not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Where a movant asserts his actual innocence, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him considering the new evidence presented in his § 2255 motion. *Schlup*, 513 U.S. at 327.

Iwuoha has failed to meet this high standard here. He has presented no new evidence of his actual innocence. Therefore, this claim should be denied.

### III.

For the foregoing reasons, the Court should DENY Iwuoha's § 2255 motion to vacate, set-aside, or correct his sentence.

Signed July 14, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).